# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **MEGHAN BRIGHT**, as Curator of the **ESTATE OF LEONARD FOOTE**, and **GARY WEIR**, as Administrator of the **ESTATE OF JEAN HOWARD**, on their own behalf and all others similarly situated, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **BROOKDALE SENIOR LIVING, INC.,** <br><br> **Defendant.** | **NO. 3:19-cv-00374** <br><br> **JUDGE CAMPBELL** <br> **MAGISTRATE JUDGE HOLMES** |

## MEMORANDUM

Pending before the Court is Defendant Brookdale Senior Living Inc.'s Motion to Compel Arbitration and Stay Proceedings. (Doc. No. 33).  Plaintiff Jean Howard filed a response in opposition to the motion with exhibits (Doc. No. 68, Exhibits A-L).  Defendant filed a reply. (Doc. No. 78).

For the reasons stated below, Defendant's Motion to Compel Arbitration and Stay Proceedings is **GRANTED**.

## I.      BACKGROUND

Plaintiff Jean Howard was a resident at Brookdale Costswold in Charlotte, North Carolina. Before she entered Brookdale, on July 31, 2017, she signed a Residency Agreement. (Compl., Doc. No. 1; Doc. No. 34-1).  The Residency Agreement signed by Ms. Howard includes an arbitration provision requiring arbitration of "[a]ny and all claims and controversies arising out of, or in ***any*** way relating to, this Agreement …" (Doc. No. 34-1 (emphasis in original)).

On May 3, 2019, Ms. Howard filed her Complaint alleging claims related to her residency at Brookdale. (Compl., Doc. No. 1). Specifically, she brought a claim for declaratory and injunctive concerning the Residency Agreement, a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), and claims for breach of contract, or, in the alternative, intentional interference with a contractual relationship, and unjust enrichment. (*Id.*). Defendant moved to compel arbitration pursuant to the arbitration provision in the Residency Agreement. (Doc. No. 33).

With leave of Court (Doc. No. 44), Plaintiff conducted limited discovery regarding the circumstances surrounding the execution of the Residency Agreement, and, more specifically, the arbitration provision of the Agreement.

The evidence shows that at the time she signed the Residency Agreement, Ms. Howard was 89-years old and suffered from blindness in one eye, dementia, cognitive impairment, and other conditions that affected her overall mental functioning. (*See* Medical Records, Doc. Nos. 68-4 – 68-8, 68-12). Plaintiff's expert opined that Ms. Howard would have required assistance to comprehend the terms of the arbitration provision because of the relative difficulty of the text and her dementia and cognitive impairment. (*See* Doc. No. 68-3).

Brookdale Sales Manager Safiyah Marie Muhammad testified that she explained the arbitration agreement to Ms. Howard on July 31, 2017, as follows:

> I let them know that if they would like to seek legal action against Brookdale, then we ask that they go through arbitration. And I allowed them – a lot of time when they hear that work, you know, people have questions. And so they want to make sure they understand what they're signing before they sign it. So I allow them to actually look through it. I usually step out of my office, and then I come back and I ask them have they had time to review it, and are

> they comfortable signing it?  If they say yes, we move forward.  If they say
> no, I would have to contact our regional on next steps …

(Muhammad Dep., Doc. No. 68-1 at PageID # 654).  Ms. Muhammad further explained that she actively sought to avoid characterizing the arbitration provisions and would instead encourage prospective residents to read the agreement for themselves. (Doc. No. 68-1 at PageID # 655, 666).

Plaintiff does not dispute that the asserted claims asserted fall within the scope of the arbitration provision.  She claims, however, that no enforceable agreement to arbitrate exists between Brookdale and Ms. Howard because "Ms. Howard did not – and could not – reach a meeting of the minds with Brookdale regarding the nature and terms of the Arbitration Agreement" due to the complexity of the text and Ms. Howard's cognitive condition. (Pl. Resp., Doc. No. 68 at 10).

## II.    LEGAL STANDARD

The question of whether Plaintiff's claim must be arbitrated is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq.*  The FAA "expresses a strong public policy favoring arbitration of a wide range of disputes" and provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) and 9 U.S.C. § 2).

The Court considers the validity of the agreement to arbitrate separate from the validity of the contract as a whole. *See Arnold v. Arnold Corp-Printed Comm. for Business*, 920 F.2d 1269, 1277-78 (6th Cir. 1990) (citing *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967))

(stating that arbitration clauses as a matter of federal law are "separable" from the contracts in which they are imbedded). Whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2; *Cooper*, 367 F.3d at 498; *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 477 (6th Cir. 2005).

In order to show that the validity of the agreement to arbitrate is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id*. Therefore, the Court reviews the facts in the light most favorable to the Plaintiff to determine whether the evidence presented raises a genuine question of material fact such that a finder of fact could conclude that no valid agreement to arbitrate exists. *Id*. (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999)). Any doubts regarding arbitrability must be resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)); *see also Great Earth*, 288 F.3d at 889 ("[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.").

Where a party establishes that there is a valid agreement to arbitrate the dispute, the Court must grant the motion to compel arbitration and stay or dismiss proceedings until the completion of the arbitration. *Lehman Bros.*, 394 F.3d at 451 (citing 9 U.S.C. §§ 3-4).

# III.  ANALYSIS

## A.  The Parties Entered Into a Valid Agreement to Arbitrate

Plaintiff argues that the parties did not enter into a valid arbitration agreement because there was no meeting of the minds due to the fact that Ms. Howard's mental capacity was such that she could not have understood the arbitration provision without assistance.[1]  Defendant argues that Ms. Howard is not seeking to void the entire Agreement on the basis of lack of capacity, and that absent a capacity challenge, which could render the entire agreement voidable, Mr. Howard cannot selectively invalidate the arbitration agreement based on lack of understanding of that provision.

The parties agree the law of North Carolina, as the place the contract was entered into, governs the Residency Agreement. (*See* Pl. Resp., Doc. No. 68 at 9).  North Carolina, applying universal contract principles, requires that for an agreement to constitute a valid contract, there must be "a meeting of the minds as to all essential terms of the agreement." *Miller v. Rose*, 532 S.E.2d 228, 232 (N.C. Ct. App. 2000).  "There must be neither doubt nor difference between the parties.  They must assent to the same thing in the same sense and their minds must meet as to all the terms.  If *any* portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Id.* (quoting *MCB Ltd. v. McGowan*, 359 S.E.2d 50, 51 (N.C. 1987)); *see also*, *Williams v. Jones*, 366 S.E. 433, 438 (N.C. 1988) (holding that a meeting

---

[1]      Although the facts presented appear to raise questions of capacity, Plaintiff does not assert that Ms. Howard lacked capacity to enter into the arbitration agreement.  In North Carolina, "[a]n agreement entered into by a person who is mentally incompetent, but who has not been formally so adjudicated, is voidable and not void." *Walker v. McLaurin*, 40 S.E.2d 455, 457 (N.C. 1946).  Plaintiff has not elected to void the contract but has instead brought this action to enforce the terms of the contract.

of the minds requires that the terms were sufficiently definite to be enforceable and that that parties "assent to the same thing in the same sense").

Whether the parties have mutually agreed to the essential terms "must be gathered from the language employed by them ... the undisclosed intention is immaterial in the absence of mistake, fraud, and the like, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Howell v. Smith*, 128 S.E.2d 144, 153 (N.C. 1962) (quoting 17 C.J.S. Contracts s32). "If his words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on the subject, as mental assent to the promises in a contract is not essential." *Id*.

"When a party affixes his signature to a contract, he is manifesting his assent to the contract." *Mosley v. WAM, Inc.*, 616 S.E.2d 140, 143 (N.C. Ct. App. 2004). Moreover, the signor of a document is "charged with full knowledge of its contents and with assent to the terms contained therein." *Wilkerson v. Nelson*, 395 F. Supp. 2d 281, 288 (M.D.D.C. 2005); *see also*, *GECMC 2006-C1 Carrington Oaks, LLC v. Weiss*, 757 S.E.2d 677, 639-40 (N.C. Ct. App. 2014) (rejecting the argument that a party to a contract cannot be bound to the terms of an agreement that he signed but did not read).

The only exception to the rule that the signor of a contract signed with "full knowledge and assent" to the terms of a contract is when the signor was "willfully misled" as to the contents of the contract or that the contents of the contract were kept from her in in "fraudulent opposition" to her request. *See GECMC*, 757 at 640 (citing *Williams v. Williams*, 18 S.E.2d 364, 366 (N.C. 1942)).

Plaintiff offers two cases in support of the argument that an inability to understand the terms of the agreement means there could be "no meeting of the minds." Neither of the cases support the proposition. In *Capps v. Blondeau*, the court found no valid contract when party seeking to enforce the contract was unable to produce a legible copy. No. 7 CVS 16486, 2010 WL 1552048 (N.C. Sup. Ct. Wake Cty., Apr. 13, 2010). In *Durham Coca-Cola Bottling Co. v. Coco-Cola Bottling Co. Consol.*, the court found that a letter of intent was not an enforceable agreement when it contemplated a later definitive agreement. No. 99 CVS 2459, 2003 WL 21017350 (N.C. Sup. Ct. Durham Cty. Apr. 28, 2003).

The evidence shows that Ms. Howell signed the Residency Agreement, which included an unambiguous agreement to arbitrate "[a]ny and all claims and controversies arising out of, or in ***any*** way relating to, this Agreement …" Plaintiff does not argue that Ms. Howard was "willfully misled," only that Defendant's actions "promoted a misunderstanding" and then failed to take steps to "ensure that Ms. Howard understood, even in a rudimentary sense, that by signing the Arbitration Agreement she was giving Brookdale a firm answer to its request to arbitrate any future disputes." (Pl. Resp., Doc. No. 68 at 13). Ms. Muhammad's testimony regarding the circumstances surrounding the signing of the Agreement does not evidence any intent to mislead. Indeed, Ms. Muhammad stated that encouraged prospective residents to read the agreement for themselves. (Doc. No. 68-1 at PageID # 655, 666). The Court notes that Plaintiff does not offer any evidence that Ms. Howard, who is now deceased, was actually misled or that she, in fact, misunderstood the arbitration provision.

The Court does not find sufficient evidence from which a reasonable fact finder could conclude there was not a meeting of the minds between the parties on the agreement to arbitrate.

## B. Public Policy

Plaintiff argues that the enforcement of the arbitration agreement would thwart the purpose of the NCDTPA by foreclosing the assertion claims alleging "systematic deception." Plaintiff concedes that Ms. Howard can "allege deception and seek materials from Brookdale relevant to its misrepresentations to her" in arbitration, but argues that she would be unable to "fully arbitrate the systemic component of her claims as it relates to Brookdale's broader commercial operations."[2] (Pl. Resp., Doc. No. 68 at 14-15).

North Carolina has a strong public policy favoring the settlement of disputes by arbitration. *See Johnston Cty. v. R.N. Rouse & Co., Inc.*, 414 S.E.2d 30, 32 (N.C. 1992); *AVR Davis Raleigh, LLC v. Triangle Const. Co., Inc.*, 818 S.E.2d 184, 186 (N.C. App. 2018). North Carolina courts regularly enforce arbitration agreements on NCDTPA claims. *WMC, Inc. v. Weaver*, 602 S.E.2d 706 (N.C. Ct. App. 2004) (affirming arbitration award of treble damages for NCDTPA claim); *Green v. Short*, 2007 WL 2570821 (N.C. Sup. Ct. Mecklenburg Cty. Mar. 9, 2007) (ordering NCDTPA claims to arbitration).

The Court does not find any evidence that Plaintiff cannot pursue the asserted claims in arbitration or that North Carolina public policy weighs in favor of denying the motion to compel arbitration.

---

[2] It is unclear whether Plaintiff argues public policy could serve as an independent basis for denying the motion to compel arbitration. Indeed, Plaintiff appears to recognize that federal and state public policy in favor of arbitration will require arbitration unless the agreement to arbitration was not validly formed. (See Pl. Resp., Doc. No. 68 at 15) ("[P]ublic policy favoring arbitration embodied in the Federal Arbitration Act and North Carolina law would not be contradicted by the failure to enforce a putative arbitration agreement not validly formed.")

## IV. CONCLUSION

For the reasons stated, the Court finds that Plaintiff has not raised a genuine issue of material fact regarding the validity of the arbitration agreement. Accordingly, the Motion to Compel Arbitration (Doc. No. 33) is **GRANTED**. *Lehman Bros.*, 394 F.3d at 451 (where a party establishes that there is a valid agreement to arbitrate the dispute, the Court must grant the motion to compel arbitration).

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE