UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEGHAN BRIGHT, as Curator of the ESTATE OF LEONARD FOOTE, on their own behalf and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKDALE SENIOR LIVING INC., <br><br> Defendant. | Case No. 3:19-cv-00374 <br><br> District Judge Campbell <br> Magistrate Judge Holmes |
| GEORGE GUNZA, by and through his sister PEGGY FISHER, as power of attorney, on his own behalf and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKDALE SENIOR LIVING INC., <br><br> Defendant. | CONSOLIDATED <br> Case No. 3:320-cv-0353 |

**MEMORANDUM OF LAW IN SUPPORT OF BROOKDALE'S MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE [ECF NO. 197]**

Pursuant to Local Rule 72.01(a) and Rule 72(a) of the Federal Rules of Civil Procedure, Defendant Brookdale Senior Living Inc. ("Brookdale") respectfully submits this Memorandum in Support of its Motion for Review of the Nondispositive Order of the Magistrate Judge. Specifically, Brookdale objects to and seeks review of certain portions of the Magistrate Judge's February 14, 2020 Order [ECF No. 197]. In support thereof, Brookdale states as follows:

# INTRODUCTION

Brookdale requests that the Court review certain portions of the Magistrate Judge's February 14, 2022 Memorandum Opinion and Order [ECF No. 197] (the "Order"). In particular, Brookdale objects to the portions of the Order relating to the scope of discovery for the putative Florida class. As the Court is aware, a settlement was previously reached in the substantially similar matter of *Runton v. Brookdale Senior Living Inc*., No. 17-cv-60664 (S.D. Fla.) (the "*Runton* Settlement"). The *Runton* Settlement bars the staffing-related claims of all residents who entered a Brookdale-affiliated community ("Community") in Florida between April 4, 2013 and March 23, 2020, and "***for whom there does not exist a signed arbitration agreement***" (the "*Runton* Class"). Thus, the only Florida residents from the *Runton* class period for whom there remain any actionable staffing claims against Brookdale are individuals for whom there ***do exist*** signed arbitration agreements. Indeed, in ruling on Brookdale's Motion to Strike the Class Allegations [ECF No. 171] (the "Motion to Strike Order"), this Court recognized that the putative Florida class in this case cannot include individuals from the *Runton* Class. *See* Motion to Strike Order at 26. Plaintiffs have recognized the same. *See, e.g.*, ECF No. 107. By extension, the only individuals from the *Runton* class period not already excluded from the putative Florida class in this case are those for whom there exists a signed arbitration agreement.

At issue is what, if any, discovery Plaintiffs are entitled to relating to the putative Florida class from the period May 3, 2015 to March 23, 2020—*i.e*., the *Runton* class period (referred to hereafter as the "*Runton* Class Period"). Brookdale has argued that Florida-specific discovery from the *Runton* Class Period should not and need not be produced because Plaintiffs have no plausible basis for including any individuals from that time period in the putative Florida class. Brookdale's position relied, in part, on the Court's holdings and conclusions in the Motion to Strike Order.

The Magistrate Judge ruled, however, that Brookdale must produce Florida-specific discovery dating back to May 3, 2015. The Magistrate Judge found that such discovery is justified because it may "uncover" residents from the *Runton* Class Period who "would not be disqualified from the putative Florida class in this matter." Order at 5-6. In so ruling, the Magistrate Judge gave two specific examples of the types of individuals from the *Runton* Class Period who may qualify for inclusion in the putative Florida class. As set forth in greater detail below, however, the Magistrate Judge's reasoning was based on a misunderstanding of the nature of the *Runton* Settlement.[1] Indeed, the very individuals to whom the Magistrate Judge referred are in fact individuals who are already ***members of the Runton Class***. Of course, those individuals—by definition—are disqualified from the putative Florida class in this case. Accordingly, the grounds on which the Magistrate Judge relied in permitting the objectionable discovery are clearly erroneous and contrary to law. In fact, permitting discovery into this issue would also be a waste of the parties' and the Court's resources. If the Court were faced with evidence and arguments attempting to disprove the existence of an individual's arbitration agreement on these grounds, the Court would merely be confirming that these individuals cannot participate in the putative Florida class. There is no need for the Court to do that under the circumstances, particularly because Plaintiffs are seeking the discovery for the precise opposite reason. The Court should therefore set aside the Magistrate Judge's decision to allow the objectionable discovery.

---

[1] A motion for reconsideration under these circumstances would be equally appropriate here. However, in an abundance of caution, Brookdale seeks reconsideration of the Order with the District Court as a Rule 72(a) objection so as not to waive its right to file such an objection.

**BACKGROUND**

I. **JOINT DISCOVERY DISPUTE STATEMENT**

During the course of discovery, Plaintiffs propounded their first set of requests for production of documents ("RFPs"). Brookdale responded with a number of objections to the scale of the requested production. The parties were eventually able to narrow their dispute to five issues. The parties then submitted a Joint Discovery Dispute Statement to Magistrate Judge Holmes setting forth each party's respective position on five issues in dispute: (1) the scope of discovery for the putative Florida class; (2) residency agreements pertaining to the putative Florida class; (3) documents authorizing third parties to sign residency agreements ("Authorizing Documents"); (4) corrective action plans for the sampled Communities; and (5) the Service Alignment materials. The Joint Discovery Dispute Statement [ECF No. 188] is incorporated herein by reference. Brookdale is requesting that this Court review the portions of the Order concerning the scope of discovery for the putative Florida class—specifically those portions of the Order that require Brookdale to produce residency agreements, Authorizing Documents, and other state-specific discovery from the May 2015-March 2020 time period (*i.e.*, the *Runton* Class Period).

II. **The Court's Motion to Strike Order**

As discussed, there is no dispute that the members of the *Runton* Class are not at issue and cannot be part of the putative Florida class in this case. Accordingly, as it pertains to those residents who entered a Community in Florida during the *Runton* Class Period, only those residents for whom there exists a signed arbitration agreement come within the scope of Plaintiffs' putative Florida class claims. Following final approval of the *Runton* Settlement, Brookdale moved to strike Plaintiffs' class allegations, arguing, *inter alia*, that the Florida class allegations should be stricken
4

because the remaining members of the putative Florida class are subject to arbitration agreements and must therefore either arbitrate their claims against Brookdale or raise highly individualized defenses to the validity of their agreements. *See* ECF Nos. 103-104.

On March 12, 2021, the Court issued an Order granting in part and denying in part Brookdale's Motion to Strike [ECF No. 171]. In addressing Brookdale's arguments regarding the putative class members' arbitration agreements, the Court first held: "To be sure, Brookdale has established more than a possibility that the claims of some putative class members may be subject to arbitration." *Id*. at 32. In fact, the Court noted that "the vast majority of those in the putative Florida class have signed arbitration agreements." *Id*. at 30. The Court then went on to find that, with regard to the putative Florida class, the only "group for whom this information is yet unknown" is "***limited***" to those individuals who entered a Community in Florida "***after*** the Runton settlement approval" (referred to hereafter as "Post-*Runton* Residents"). *Id*. at 32 (emphasis added). Of course, that information is unknown only as to Post-*Runton* Residents because—based on the face of the *Runton* Class definition—all remaining putative Florida class members from the *Runton* Class Period necessarily have signed arbitration agreements.[2]

The Court ultimately concluded, however, that because the information was unknown as to Post-*Runton* Residents, Brookdale could not show without further discovery "that there is no possibility a class of these ***new residents*** could not be maintained." *Id.* (emphasis added). And because further discovery on the issue was still required for these new residents (*i.e.*, the Post-*Runton* Residents), the Court declined to strike the class allegations at the pleading stage.

---

[2] The only exception is the five individuals who chose to opt out of the *Runton* settlement, one of whom is the Florida Plaintiff in this case.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(a), a party may "serve and file objections" to a magistrate judge's non-dispositive order within 14 days of being served with the order. Fed. R. Civ. P. 72(a). Upon timely objection, a district court must review the order and modify or set aside any part of the order if the movant demonstrates that it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); *see also* L.R. 72.01 (allowing a party to object to the nondispositive decisions of a magistrate judge by filing a "Motion for Review of Nondispositive Order of Magistrate Judge)". The "clearly erroneous standard applies only to factual findings," while "legal conclusions will be reviewed under the more lenient contrary to law standard." *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, No. 3:19-CV-154, 2020 WL 60244, at *2 (E.D. Tenn. Jan. 6, 2020), *aff'd*, 982 F.3d 989 (6th Cir. 2020).

A finding of fact is clearly erroneous "where 'it is against the clear weight of the evidence' or where the court is of the 'definite and firm conviction that a mistake has been made.'" *Dickerson v. Johnson*, No. 3:14-CV-1717, 2016 WL 1028117, at *3 (M.D. Tenn. Mar. 15, 2016) (citing *In re Mace*, 573 Fed.App'x. 490, 496 (6th Cir. 2014)). A legal conclusion is contrary to law "if it contradicts or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Ellison v. Clarksville Montgomery Cty. Sch. Sys.*, No. 3:17-CV-00729, 2018 WL 998337, at 1 (M.D. Tenn. Feb. 21, 2018); *Doe v. Aramark Educ., Res., Inc.*, 206 F.R.D. 459, 460-64 (M.D. Tenn. 2002) (reversing a Magistrate Judge's order permitting the discovery of certain settlement agreements upon a determination that the information sought was not discoverable). As discussed below, the objectionable portions of the Magistrate Judge's Order are both clearly erroneous and contrary to law.

# ARGUMENT

I. **THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THERE ARE RESIDENTS FROM THE *RUNTON* CLASS PERIOD WHO MAY NOT BE DISQUALIFIED FROM THE PUTATIVE FLORIDA CLASS IN THIS CASE**

The Magistrate Judge ruled that discovery for the putative Florida class from May 2015-March 2020 period was justified because it may uncover residents from that period who may not be "disqualified from the Putative Florida class." Order at 5. In so concluding, the Magistrate Judge gave the following two examples to describe the types of individuals from the *Runton* Class Period who could potentially be part of the putative Florida class:

1. Residents "who had signed a Residency Agreement but had 'crossed out' the arbitration provision." *Id.*

2. Residents with "a pre-March 23, 2020, Residency Agreement signed by an agent acting on behalf of a resident who in fact lacked authority to bind the resident to arbitration." *Id.*

As the Magistrate Judge noted in the Order, Plaintiffs' counsel had pointed to two specific individuals at the discovery conference as examples of those specific circumstances. *Id.* Plaintiffs' counsel had argued that individualized inquiries into the validity of the arbitration agreements would not be necessary for those two specific types of individuals because the validity of their arbitration agreements could be determined based on the face of "objective" documentation. *See* ECF No. 188 at 3.

Based on the Magistrate Judge's perception that these types of individuals could potentially be part of the putative Florida class, she determined that "additional discovery may uncover other similarly qualifying individuals … [and] that such possibilities justify discovery spanning back to May 3, 2015." Order at 5–6. But the Magistrate Judge's perception is erroneous. In fact, both categories of residents that the Magistrate Judge cited are ***members*** of the *Runton* Class. Thus, by definition, they cannot be part of the putative Florida class in this case. *See* ECF No. 171 at 26.

7

Case 3:19-cv-00374   Document 200   Filed 02/28/22   Page 7 of 13 PageID #: 2754

### A. Residents with Crossed-Out Arbitration Provisions.

As to the first example the Magistrate Judge gave—residents who signed a residency agreement "but had 'crossed out' the arbitration provision"—the Magistrate Judge's conclusion demonstrates a basic misunderstanding of the *Runton* Class definition. Indeed, the very individual to whom Plaintiffs' counsel had referred at the discovery conference for this example is ***Gloria Runton*** herself—the ***class representative*** in *Runton* and an undisputed member of the *Runton* Class.[3] In other words, the Magistrate Judge was led to believe that Ms. Runton herself could somehow still be a part of the putative Florida class in this case (although it does not appear as if the Magistrate Judge appreciated that the example provided was Ms. Runton).

Of course, Ms. Runton's claims are barred by the *Runton* Settlement, and she therefore cannot be part of the putative Florida class in this case. Nor can anyone else with the same circumstances (*i.e.*, a crossed-out arbitration provision) be part of the putative Florida class. Ms. Runton, like any other resident with a crossed-out arbitration provision, never agreed to arbitration in the first place. As such, there does not exist a signed arbitration agreement for her or anyone else like her. Indeed, that is what renders her and others similarly situated members of the *Runton* Class. And by virtue of being a member of the *Runton* Class, Ms. Runton and those similarly situated cannot be members of the putative Florida class in this case. Yet, the Magistrate Judge erroneously concluded that Ms. Runton and others like her "would ***not*** be disqualified from the putative Florida class in this case." Order at 5–6 (emphasis added). That finding is clearly erroneous and contrary to law.

---

[3] *See* ECF No. 188-3, Exhibit C to Joint Discovery Dispute Statement, Gloria Runton Residency Agreement.

### B.     Residents with Unauthorized Arbitration Agreements.

As to the second example the Magistrate Judge gave—residents whose authorizing agents signed their residency agreements but did not have the authority to agree to arbitration—the Magistrate Judge's conclusion also demonstrates a misunderstanding of the *Runton* Class. The Magistrate Judge reasoned that individuals with unauthorized arbitration agreements "would not be disqualified from the putative Florida class in this case." That necessarily means the Magistrate Judge did not deem these individuals to be members of the *Runton* Class. But pursuant to applicable Florida law, these individuals are indeed members of the *Runton* Class.

At the outset, before deciding whether an arbitration agreement is enforceable, courts must make a threshold determination as to whether such an agreement exists at all. *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005). To make that determination, courts perform an analysis in accordance with "ordinary state-law principles that govern the formation of contracts." *Sevier Cty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 475 (6th Cir. 2021) (quoting *Glazer*, 394 F.3d at 450); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate … courts generally … should apply ordinary state-law principles that govern the formation of contracts."). In a diversity action such as this, the court's choice-of-law analysis "is governed by the law of the state where the federal court sits." *In re Air Crash Disaster*, 86 F.3d 498, 540–41 (6th Cir. 1996) (citing *Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Tennessee follows the rule of *lex loci contractus*, which provides that 'a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.'" *Rubio v. Carreca Enters., Inc.*, 490 F. Supp. 3d 1277, 1283 (M.D. Tenn. 2020) (quoting *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014)). Because all of the agreements at issue were executed in Florida, Florida

law applies to determine whether an agreement to arbitrate exists between Brookdale and the putative Florida class members.

Under Florida law, **no agreement to arbitrate exists** where an agent or other representative of a resident signed an agreement to arbitrate without the authority to do so. *See, e.g.*, *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 639–40 (Fla. Dist. Ct. App. 2017) (finding no arbitration agreement existed where unauthorized agent enters agreement on behalf of principal); *Perry ex rel. Perry v. Sovereign Healthcare of Metro West, LLC*, 100 So.3d 146, 148 (5th DCA 2012) (holding no valid agreement existed between nursing home and resident where neither resident nor any other person signed on resident's behalf). Because no arbitration agreement exists for individuals whose agent did not have authority to bind them to arbitration, all such individuals from the *Runton* Class Period are necessarily members of the *Runton* Class. *See Runton* Settlement (settlement class defined to include individuals from the Runton Class Period "*for whom there does not exist a signed arbitration agreement*"). The claims of these individuals are therefore already barred by the *Runton* Settlement, and they necessarily cannot be members of the putative Florida class in this case. The Magistrate Judge's conclusion otherwise is clearly erroneous and contrary to law.

## II. Because the Magistrate Judge Erroneously Interpreted the *Runton* Settlement Agreement, She Also Erroneously Concluded that Discovery from the *Runton* Class Period Should be Permitted

As noted, Brookdale argued to the Magistrate Judge that Florida-specific discovery from the *Runton* Class Period should not be permitted because there are no individuals from that time period who could practically qualify for membership in the putative Florida class. Again, by virtue of having an existing, signed arbitration agreement, those individuals must either arbitrate their

10
Case 3:19-cv-00374    Document 200    Filed 02/28/22    Page 10 of 13 PageID #: 2757

claims or raise highly individualized defenses to the validity of their arbitration agreement.[4] The Magistrate Judge rejected Brookdale's argument, however, on the grounds that there were two potential categories of individuals who were not part of the *Runton* Class but who could nevertheless still potentially qualify for membership in the putative Florida class. In light of that determination, the Magistrate Judge concluded that Florida-specific discovery from the *Runton* Class Period was warranted. However, as discussed above, the individuals to whom the Magistrate Judge pointed are in fact members of the *Runton* Class—meaning they and others like them cannot qualify for inclusion in the putative Florida class in this case.

Because the Magistrate Judge erroneously concluded that these individuals could potentially be part of the putative Florida class, her resulting decision to permit Florida-specific discovery from the *Runton* Class Period was equally as erroneous. Indeed, allowing discovery into this issue could also undermine the interests of judicial economy. If Plaintiffs obtain and present discovery that there are individuals from the *Runton* Class Period who either have crossed-out arbitration provisions or unauthorized signatories, they would merely be reinforcing that these individuals cannot participate in the putative Florida class. And because these individuals cannot participate, there is no need for the Court to even consider them or their non-existent arbitration agreements when it rules on class certification. As such, it would be a waste of resources if the parties and the Court were forced to litigate this irrelevant issue. Accordingly, the District Court should set aside the portions of the Order that permit Florida-specific discovery from the *Runton* Class Period—including residency agreements, Authorizing Documents, and any other state-specific discovery.

---

[4] Indeed, that is precisely what occurred with the prior North Carolina plaintiff in this case (Jean Howard): she raised a highly individualized mental capacity defense, the parties engaged in significant and substantive individualized discovery, and the Court ultimately ruled that she was subject to arbitration. *See* ECF No. 96 at 5, 9.

11

## **CONCLUSION**

For the foregoing reasons, Brookdale respectfully requests that the Court sustain its objections to the Magistrate Judge's February 14, 2022 Memorandum Opinion and Order as to the scope of discovery for the putative Florida class and set aside the portions of the Order that permit Florida-specific discovery from the May 2015-March 2020 time period.

Dated: February 28, 2022

Respectfully submitted:

LEWIS THOMASON, PC
*/s/ David A. Changas*
David A. Changas, BPR #20679
dchangas@lewisthomason.com
424 Church Street, Suite 2500
Nashville, TN 37219-8615
Telephone: (615) 259-1366

MOORE & LEE, LLP
*/s/ John A. Bertino*
John A. Bertino, (*pro hac vice pending*)
j.bertino@moorelandlee.com
1751 Pinnacle Drive, Suite 1100
McLean, VA 22102
Telephone: (703) 506-2050

*/s/ Erica W. Rutner*
Erica Rutner (Fla. Bar No. 0070510)
e.rutner@moorelandlee.com
501 East Las Olas Blvd., Suite 200
Ft. Lauderdale, FL 33301
Telephone: (703) 940-3763

***Counsel for Defendant Brookdale Senior Living***

# CERTIFICATE OF SERVICE

      I hereby certify that on this the 28th day of February, 2022, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF BROOKDALE'S MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE [ECF NO. 197] was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

      Christa L. Collins, Esq.
      Collins Law PL
      433 Central Avenue, 4th Floor
      St. Petersburg, FL 33701

      J. Andrew Meyer, Esq.
      J. Andrew Meyer, PA
      7431 114th Avenue, Suite 104
      Largo, FL 33773

      Michael S. Kelley, Esq.
      Bank of America Center
      550 W. Main Street, 4th Floor
      Knoxville, TN 37901

      Elizabeth Aniskevich, Esq.
      M. Geron Gadd, Esq.
      Kelly Bagby, Esq.
      Ali Naini, Esq.
      A.A.R.P. Foundation Litigation
      601 E Street, NW
      Washington, DC 20049

      Stephen Gugenheim, Esq.
      Gugenheim Law
      118 St. Mary's Street
      Raleigh, NC 27605

                                              */s/ David A. Changas*