**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MEGAN BRIGHT, as Curator of the ESTATE OF LEONARD FOOTE, and BARBARA J. ADAMS, as Power of Attorney for DAVID G. ADAMS, on their own behalf and all other similarly situated** | ) | |
| **v.** | ) | **Case No. 3:19-cv-00374**<br>**Judge Campbell**<br>**Magistrate Judge Holmes** |
| **BROOKDALE SENIOR LIVING, INC.** | ) | |
| | ) | **Consolidated with** |
| **GEORGE GUNZA, by and through his sister, PEGGY FISHER, as power of attorney, and MARK JEFFREY HARRIS, as Executor of the Estate of HATTIE JEANETTE WRIGHT SMITH, on his own behalf and all others similarly situated** | ) | **Case No. 3:20-cv-00353** |
| **v.** | ) | |
| **BROOKDALE SENIOR LIVING, INC.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Among the matters currently pending before this Court are an unopposed Motion for Discovery Conference filed by Plaintiff Megan Bright, as Curator of the Estate of Leonard Foote, and Barbara J. Adams, as Power of Attorney for David G. Adams, on their own behalf and all others similarly situated, ("Bright" or the "Florida Plaintiff") and Mark Jeffrey Harris, as Executor of the Estate of Hattie Jeanette Wright Smith, on their own behalf and all others similarly situated ("Harris" or the "North Carolina Plaintiff")[1] (collectively, "Plaintiffs") (Docket No. 276), and a

[1] Plaintiff George Gunza was previously serving as the named North Carolina Plaintiff. (Docket No. 134.) However, on November 6, 2022, Mr. Gunza passed away. (Docket No. 276 at

joint discovery dispute statement filed by Plaintiffs and Defendant Brookdale Senior Living, Inc. ("Brookdale") (Docket No. 277).

For the reasons that follow, Plaintiffs' Motion (Docket No. 276) is DENIED to the extent the Court does not believe that a discovery conference is necessary to rule upon the issues detailed in the joint discovery dispute statement (Docket No. 277), which are decided as detailed below.

## I. BACKGROUND

Familiarity with this case is presumed and only the background necessary to give context to or explain the Court's ruling is recited. These consolidated cases involve Plaintiffs' allegations that Brookdale, an operator of assisted-living facilities, intentionally understaffed those facilities, which caused Plaintiffs and the proposed class members—residents at Brookdale facilities in North Carolina and Florida—to receive inadequate care.

With respect to written discovery, on April 7, 2022, Plaintiffs propounded on Brookdale their second set of requests for production ("RFPs"), which concerned class certification.[2] Brookdale responded with several objections on May 9, 2022. This second set of RFPs was propounded prior to the entry of the Fourth Modified Case Management Order on May 16, 2022, which stated that "[n]o additional class certification discovery may be requested by any party without leave of court." (Docket No. 223 at ¶ 3.) The deadline to complete written class certification discovery was November 30, 2022. (Docket No. 230 at 2–3.)

¶ 6.) The deadline for substitution in place of Mr. Gunza under Fed. R. Civ. P. 25(a)(1) is June 1, 2023. (Docket No. 281.)

[2] In a prior Order issued on February 14, 2022, this Court resolved several issues related to the first set of RFPs related to class certification that Plaintiff propounded on Defendant. (Docket No. 197.)

On November 4, 2022, the parties filed a Motion for Discovery Conference and joint discovery dispute statement, which concerned the same discovery requests that are at issue in the present motion. (Docket No. 242.) However, the Court denied this motion because the parties failed to meet in person in compliance with the discovery dispute resolution procedures in effect in this case. (Docket No. 245.) That denial was made without prejudice to the parties' refiling after having the mandatory in-person meeting. (*Id.*)

On March 30, 2023, the parties filed the present motion and joint discovery dispute statement, both of which focus on the same issues as the November 4, 2022 motion. (Docket Nos. 276, 277.) The parties advise that, despite disagreeing on several issues related to the second set of RFPs, they have engaged in multiple meet-and-confer telephone conferences, letter exchanges, and one in-person meeting, all in compliance with the operative discovery dispute resolution procedures. (Docket No. 276.) The parties have presented the Court with two issues to resolve: whether Plaintiffs are entitled to discovery relating to (1) "time values" or the "time required to provide the services" for which Brookdale charges residents (Request No. 1) and (2) corporate efforts to increase "census, sales, and occupancy" at Brookdale facilities (Request No. 7).

As a preliminary matter, the Court finds both parties' inaction on these discovery issues to be troublesome. The Court appreciates that the parties have worked together to resolve disputes related to several document requests and commends these efforts. *See* Docket No. 276 at 2. Nevertheless, the Court finds that the parties had ample time to discuss the issues raised in their motion and joint discovery dispute statement; make meaningful attempts to resolve those issues in accordance with the discovery dispute resolution procedures in effect in this matter; and, if those efforts proved to be unsuccessful, put these issues before the Court via a properly made motion and properly filed joint discovery dispute. Unfortunately, both parties failed to bring these issues

to the Court's attention in a timely manner, which has resulted in the avoidable lapse of a pertinent deadline.

As detailed above, Plaintiffs served their written requests nearly one year before the parties properly brought this dispute to the Court's attention. (Docket No. 276 at 2.) Approximately six months after Brookdale served its responses to Plaintiffs' requests, but less than one month before the deadline for class certification discovery, the parties filed their first motion for a discovery conference. (Docket Nos. 230 at 2–3, 242.) It was not until nearly five months after this Court denied the parties' first motion that they filed their second motion, which is now before the Court. (Docket Nos. 276.)

In the discovery dispute statement, Brookdale argues that the deadline for class certification discovery has passed, which it alleges should serve as an additional basis to deny the discovery that Plaintiffs seek. While the Court generally agrees with Brookdale that Plaintiffs' requests are not appropriate at the class certification phase of discovery, the Court wants to make clear that its ruling is *not* based on the passing of the discovery deadline. Parties should not be encouraged to undertake dilatory tactics and "run out the clock" so they can then argue that discovery deadlines have passed. That may not have been either parties' intent, but such an argument will have no bearing on this Court's ruling given the ample time that the parties had to bring these issues to the Court. The Court understands that counsel are busy and have time-consuming obligations both in this matter and others, but the Court nevertheless finds that sufficient time existed for the parties to confer on these issues and bring them to the Court's attention before November 4, 2022 and certainly before March 30, 2023.

Further, the Court finds that a discovery conference is not necessary to resolve the issues that are in dispute in the joint discovery statement. This finding is based on the arguments made

by the parties in the joint discovery dispute statement; the Court's familiarity with this matter; the Court's prior findings with respect to discovery disputes regarding the scope of class certification discovery;[3] the posture of the current case management schedule and plan;[4] the parties' delay in bringing this matter to the Court; and, importantly, the Court's obligation to timely and effectively fulfill its obligation to all other litigants to administer justice promptly and adequately. With respect to these discovery issues, the Court would not be able to schedule a telephone hearing until mid-May, at the earliest, because of the Court's previously scheduled criminal duty responsibilities, case management conferences, and hearings with other litigants. Accordingly, the Court finds that foregoing a discovery hearing and providing the parties with a written order is the best and most efficient use of judicial resources to provide a timely resolution and avoid delays to the case management schedule.

## II. ANALYSIS

### A. Legal Standard

Parties are generally allowed to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Although Rule 26 permits a broad search for information that need not be admissible to be discoverable, determining whether something is "proportional" to the needs of a particular case requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources,

---

[3] *See, e.g.*, Docket Nos. 197, 236.

[4] The deadline to file any motion for class certification is August 7, 2023 (Docket No. 239 at 2); to complete class certification fact depositions for certain plaintiffs is May 13, 2023 and for others is July 7, 2023 (Docket No. 267 at 1); for Plaintiffs' expert disclosures and reports is May 18, 2023 (*id.*); and for Brookdale's expert disclosures and report is June 16, 2023 (*id.*).

the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. It is "well established that the scope of discovery is within the sound discretion of the trial court." *In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020) (quoting *Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988)).

Despite this breadth, the trial court is directed to prevent the production of information that falls outside the scope of discovery described in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii). A party that files a motion to compel discovery carries the initial burden of demonstrating that the information sought is relevant, and if this burden is met, the party opposing production then bears the burden of establishing that the discovery sought "is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015) (internal citations omitted).[5]

**B. Issues in Dispute**

**1. Time Values**

In RFP 1, Plaintiffs seek the production of documents relating to "time values." They describe what they are seeking as documents showing "the time required to provide the services for which you [Brookdale] charge residents." (Docket No. 277 at 5.) Plaintiffs allege that residents at Brookdale facilities do not receive one-on-one personal care services, but instead depend on a "shared pool" of staff time to receive those services. (*Id.* at 6.) Plaintiffs believe that the amount

[5] To be clear, to the extent that the Court rules on the relevancy of the discovery that is being requested, that determination is only for purposes of class certification discovery and should not be construed or relied on for any other purposes, including whether such discovery might be relevant to the underlying merits. The Court is certainly not inviting further contest should Plaintiffs make the same or similar merits discovery requests. The Court is expressing no opinion either way and simply reminds the parties that they should carefully consider their respective positions in this regard.

charged for those services may depend on the amount of time it typically takes for someone to perform those services. (*Id.*)

Plaintiffs urge that this "time value" information is vital to their quest for class certification. (*Id.*) They believe that, with the time value information, they can provide the Court with a methodology that will demonstrate that Brookdale "systemically" provided less staff time for personal care services than it was required to provide. (*Id.*) They also believe they can methodically demonstrate the resulting damages if they have time value information. (*Id.*) To demonstrate this methodology, Plaintiffs allege that they need to analyze three variables: (1) the total care needs of a resident population; (2) the total staff time required to meet those needs; and (3) the actual staff time provided for those needs. (*Id.*) They state that Brookdale has produced "objective data" that allows Plaintiffs to compute variables one and three, but that Brookdale has failed to produce that same type of information to allow them to compute variable two. (*Id.*) They urge that Brookdale's response to RFP 1 would provide them with the time value information that they need. (*Id.*)

Plaintiffs argue that they will be put in an unresolvable bind with respect to class certification if Brookdale does not produce the time value documents, an outcome that they argue would be prejudicial to them. (*Id.* at 7.) They urge that they will have to either conduct their own time studies and use that information in their class certification methodology or describe how time values would be used in their class certification methodology. (*Id.*) They assert that Brookdale has not agreed to allow either of these alternative approaches. (*Id.*) Instead, Brookdale has reserved its right to challenge the validity of Plaintiffs' class certification bid. (*Id.*) Plaintiffs argue that this puts them in a "Catch-22" where they have no viable options because of Brookdale's refusal to compromise. (*Id.*) Plaintiffs also allege that this information is relevant because it will help them demonstrate that their damages can be measured on a class basis and are consistent with their

theory of liability; that it will not be a burden for Brookdale to produce this information; and that they are asking only for those documents that "show what [the time values] are" rather than for all documents related to time values. (*Id.*)

In response, Brookdale asserts that the Court has already considered and rejected this request for documents. (*Id.* at 9.) Brookdale points to a prior discovery dispute between the parties, which the Court resolved in an Order on February 14, 2022. *See* Docket No. 197. In this Order, the Court found that the documents that Plaintiffs sought in its Request No. 5 from their First Requests for Production – "documents sufficient to show, identify, [and] describe the assumptions made during each Class Period when developing staffing schedules with respect to the time it would take to perform each task to be undertaken as part of such schedules" (Docket No. 188-2 at 9) – was relevant to the merits of the complaint, and therefore not appropriate for precertification discovery. (Docket No. 197 at 14–15.) In making this finding, this Court looked to the allegations in Plaintiffs' complaint regarding Brookdale's misuse of a staffing algorithm called the "Service Alignment Software"; Brookdale's inability to cogently explain how the documents it had in its possession were insufficient to determine commonality; an affidavit from a Brookdale executive regarding the company's inability to share information from the SA Software with an outside party; and the potential disclosure of trade secrets with respect to the SA Software before a class has been certified. (*Id.* at 14–16.) In addition, Brookdale argues that, even if this was Plaintiffs' first request for time value information, the request should nevertheless be denied because the production deadline for class certification has passed; the information that Plaintiffs seek is not relevant to the question of class certification; and production would lead to undue harm for Brookdale. (Docket No. 277 at 9, 11.)

Once again, the Court largely agrees with Brookdale's assertions with respect to the "time value" information that Plaintiffs seek. The Court finds that the request at issue – Plaintiffs' Request No. 1 from their Second Requests for Production – is, in essence, seeking the same information that Plaintiffs previously sought in Request No. 5 from their First Requests for Production, which this Court found to be inappropriate at the precertification discovery phase. The two requests state as follows:

> Request No. 5: For each of the facilities in the Agreed-Upon Sample please provide documents sufficient to show, identify, describe the assumptions made during each Class Period when developing staffing schedules with respect to **the time it would take to perform each task** to be undertaken as part of such schedules.

(Docket No. 188-2 at 9 (emphasis added).)

> Request No. 1: To the extent, if at all, the Personal Service Charges and/or acuity categories that are assigned as a result of Personal Service Assessments take into account **the time required to provide the services for which you charge residents**, including but not limited to Basic and Personal Service charges, produce documents showing those time values. This request is specifically not asking for production of Your time studies or any documents showing how Service Alignment Software treats or considers such time values to set staffing.

(Docket No. 227 at 5 (emphasis added).) Both requests seek documents related to the time that Brookdale believes is either required or needed to provide services or perform tasks for patients. Plaintiffs have not argued that the two are distinct.

Instead, Plaintiffs contend for a second time that Brookdale must produce this time value information because it is needed for Plaintiffs to demonstrate class-wide liability and damages. *Compare* Docket No. 188 at 32 *with* Docket No. 277 at 6–7. However, Plaintiffs yet again fail to convincingly explain either (1) how this new request is *not* inappropriate merits-based discovery, or (2) if it is merits-based discovery, how this new request is necessary for class certification. *See Kilbourne v. Coca-Cola Co.*, No. 14CV984 MMA (BGS), 2015 WL 10943827, at *6 (S.D. Cal. Apr. 24, 2015). With respect to the first explanation, Plaintiffs do not provide any argument to

dispel the Court's prior holding that time spreadsheets or time value information is part of merits-based discovery rather than class certification discovery.

With respect to the second explanation, Plaintiffs argue that the time value information that they are seeking is the missing element of their methodology for demonstrating liability and damages, and, therefore, the production of such documents is necessary. The Court does not find Plaintiffs' argument to be convincing. Plaintiffs argue that Brookdale is stonewalling them by, on the one hand, failing to produce the time value documents and, on the other hand, refusing to compromise by promising not to challenge Plaintiffs' class certification methodology. However, even if Plaintiffs must resort to their back up plan – i.e., conducting their own studies or describing how the time values would be used in their methodology – Plaintiffs have failed to show the Court how such an outcome would doom them in their bid to attain class certification.

Although the method for calculating damages in a bid for class action must be susceptible to computation using a "mathematical or formulaic calculation," that method may nevertheless be "approximate." *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 267–68 (N.D. Ohio 2014) (quoting *Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003)); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946)). This compromise "embodies the principle that a too-demanding damages standard would act as an 'inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain.'" *In re Polyurethane*, 314 F.R.D. at 267–68 (quoting *Bigelow*, 327 U.S. at 264).

Though Plaintiffs may be in a better position for class certification if they have the time value information that they have requested, this Court is not convinced that discovery of such information is either appropriate at the class certification stage or necessary for Plaintiffs' class

certification bid. For these reasons, the Court will deny Plaintiffs' request for the information sought in Request No. 1 prior to any ruling on a motion to certify the putative class.

**2. Increasing "Census, Sales, and Occupancy"**

In RPF 7, Plaintiffs seek the production of documents that Brookdale's "corporate headquarters" have created or maintained that show Brookdale's efforts to increase "census, sales, and occupancy" at its facilities in Florida and North Carolina. (Docket No. 277 at 13.) Plaintiffs believe that these documents are essential to demonstrate liability on a class-wide basis because they will serve as proof that Brookdale has corporate control over its facilities. (*Id.*) They argue that there is a direct relationship between Brookdale's alleged strategies to increase sales and occupancy at its facilities and its alleged failure to provide adequate staffing, all of which is relevant to their theory of liability. (*Id.*) Accordingly, they believe that discovery of these documents is relevant to their theory of liability.

Plaintiffs also argue that these documents are directly relevant to and necessary for their class certification bid. (*Id.* at 14.) They believe that information related to sales and occupancy will show whether Brookdale – and not the individual facilities – implemented facility-wide mandates based on whether the individual facilities had sufficient staff to meet the need of residents. (*Id.*) Plaintiffs allege that, if Brookdale's efforts to increase occupancy "did not take staffing realities into account," this will serve as evidence that Brookdale did not staff its facilities according to resident needs. (*Id.*) Plaintiffs allege that they have some email communication indicating that this may be the case, but they need a more fulsome production to prove their theory of liability. (*Id.* at 14–15.)

Finally, Plaintiffs believe that the information within the sales and occupancy documents will help them bolster a counterargument to what they predict Brookdale will argue in opposition

to class certification. (*Id.* at 14.) They predict that Brookdale will try to thwart class certification by arguing that its corporate headquarters was not involved with sales and occupancy expectations, but rather that these expectations were generated solely by the individual facilities. Plaintiffs want the requested documents to disprove Brookdale's potential argument against class certification.

Brookdale, on the other hand, argues that efforts made by its corporate office to increase sales and occupancy at its facilities are irrelevant to Plaintiffs' theory of liability or the alleged common question, which is whether Brookdale maintained corporate control over staffing levels at its facilities. (*Id.* at 16.) In other words, Brookdale believes that any corporate efforts to increase sales and occupancy would be distinct from and unrelated to corporate efforts to staff facilities, so discovery of the former would be inappropriate. Brookdale also argues that the requested documents have no bearing on the threshold question of class certification, which is *whether* Brookdale "uniformly dictated their staffing levels." (*Id.* at 17.) Brookdale believes that the requested documents would only answer the next question that would come after class certification, which is *why* Brookdale "uniformly dictated their staffing levels." (*Id.*) Finally, Brookdale argues that, even if sales and occupancy documents were relevant, their production would be "cumulative and unnecessary" because Brookdale has already searched for and produced responsive email correspondence and has agreed to provide testimony on corporate involvement in marketing. (*Id.* at 16, 18.)

The Court agrees with Brookdale that documents related to its purported corporate efforts to increase censure, sales, and occupancy at its facilities are not relevant at the class certification phase. It is not clear how this information would be implicated at the class certification stage, except to possibly "disprove" an argument that Brookdale may (or may not) make in opposition to class certification. (*Id.* at 14.) Instead, the information that could be gleaned from these documents

– and that, according to Plaintiffs, has already "show[n] communications between corporate managers and facility managers concerning their efforts to increase sales and occupancy" (*id.* at 15) – is whether and how Brookdale's corporate office controlled efforts to increase sales and occupancy at the individual facilities. Or, as Plaintiffs put it, "whether the drive to increase occupancy at any given facility considers whether those facilities have sufficient staff to meet the needs of existing residents, let alone new and incoming residents." (*Id.* at 14.)

In short, Plaintiffs' inquiry appears to strike squarely at the heart of the claims underpinning this lawsuit and not at the threshold question of class certification. Therefore, discovery of these documents should be limited at the class certification stage. For these reasons, the Court will deny Plaintiffs' request for the information sought in Request No. 7 prior to any ruling on a motion to certify the putative class.

## III. CONCLUSION

Based on the foregoing, Plaintiffs' Motion (Docket No. 276) is DENIED to the extent that the Court does not believe that a discovery conference is necessary to rule upon the issues detailed in the joint discovery dispute statement, and the Court will deny Plaintiffs' request to compel Brookdale to produce the information sought in Request Nos. 1 and 7 in connection with class certification discovery.

It is SO ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge