IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MEGHAN BRIGHT**, as Curator of the **ESTATE OF LEONARD FOOTE**, and **BARBARA J. ADAMS**, as Power of Attorney for **DAVID G. ADAMS**, on their own behalf and all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**BROOKDALE SENIOR LIVING, INC.,**<br><br>**Defendant.**<br><br>**GEORGE GUNZA,** by and through his sister **PEGGY FISHER,** as power of attorney, and **MARK JEFFREY HARRIS**, as Executor of the Estate of **HATTIE JEANNETTE WRIGHT SMITH**, on their own behalf and all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**BROOKDALE SENIOR LIVING, INC.**<br><br>**Defendant.** | NO. 3:19-cv-00374<br><br>Consolidated with<br>NO. 3:20-cv-00353<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE HOLMES |

## MEMORANDUM

Before the Court is Defendant Brookdale Senior Living, Inc.'s Motion to Compel Arbitration (Doc. No. 264), Plaintiff's Response (Doc. No. 278), and Defendant's Reply (Doc. No. 284). For the reasons stated herein, the Motion to Compel Arbitration is **DENIED**.

# I. BACKGROUND

This putative class action suit is brought by former residents (or their estates) of assisted living facilities owned or operated by Defendant Brookdale Senior Living, Inc. ("Brookdale"). The Amended Complaint, filed March 13, 2023, asserts claims by Plaintiff Barbara Adams ("Mrs. Adams"), as Power of Attorney for David Adams ("Mr. Adams") stemming from alleged deficiencies in care at the Brookdale facility. (Doc. No. 269-1). Mr. Adams was a resident of Paddock Hills, a Brookdale facility in Ocala, Florida, for approximately two months from March 14, 2022, until May 26, 2022. (*Id.* at ¶ 106).

Before he became a resident, Mr. Adams executed a Durable Power of Attorney and Designation of Preneed Guardian ("Power of Attorney") granting Mrs. Adams authority to act on his behalf. As relevant to the instant motion, the Power of Attorney provides Mrs. Adams with the following authority:

> 17. **DEMAND AND RECEIVE.** To demand, arbitrate, mediate, settle, sue for, collect, receive, deposit, expend for my benefit, reinvest, or make such other appropriate disposition of as my Agent deems appropriate all cash, rights to the payment of cash, property (real, personal, intangible, or mixed), debts, dues right, accounts, legacies, bequests, devises, dividends, annuities, rights, or benefits to which I am now or may in the future become entitled, regardless of the identity of the individual or public or private entity involved, including but not limited to benefits payable to or for my benefit by any governmental agency or body...
>
> ….
>
> 19. **LITIGATION AUTHORITY.** To institute, supervise, prosecute, defend, intervene in, abandon, compromise, arbitrate, mediate, settle, dismiss, and appeal from any and all legal, equitable, judicial or administrative hearings, actions, suits, proceedings, attachments, arrests, or distresses, involving me in any way, including but not limited to claims by or against me arising out of property damages or personal injuries suffered by or caused by me, and otherwise engage in litigation involving me, my property, or any interest of mine … However, my agent shall not have the power to waive a trial by jury.

(Doc. No. 265-1).

2

As attorney-in-fact and agent for Mr. Adams, Mrs. Adams executed a Residency Agreement that contains an Agreement to Arbitrate. (*See* Residency Agreement, Doc. No. 265-2 at V). Citing the Agreement to Arbitrate in the Residency Agreement, Brookdale moved to compel arbitration.

## II. LEGAL STANDARD

The question of whether Plaintiff's claim must be arbitrated is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq*. The FAA "expresses a strong public policy favoring arbitration of a wide range of disputes" and provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) and 9 U.S.C. § 2). "Arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 777 (6th Cir. 2005) (quoting *United Steelworkers, Loc. No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)).

The Court considers the validity of the agreement to arbitrate separate from the validity of the contract as a whole. *See Arnold v. Arnold Corp-Printed Comms. for Business*, 920 F.2d 1269, 1277-78 (6th Cir. 1990) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)) (stating that arbitration clauses are "separable" from the contracts in which they are imbedded).

The party claiming an agreement to arbitrate is defective must raise a genuine issue of material fact concerning the validity of the agreement. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id*. Therefore, the Court reviews the facts in the light most favorable to the Plaintiff

3

to determine whether the evidence presented raises a genuine question of material fact such that a finder of fact could conclude that no valid agreement to arbitrate exists. *Id*. (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999)).

Because the agreement to arbitrate is a matter of contract, whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2; *Cooper*, 367 F.3d at 498; *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 477 (6th Cir. 2005). Florida law governs the Agreement to Arbitrate and the Power of Attorney, both of which were executed in Florida. *Glenway Indus., Inc. v. Wheelabrator-Frye, Inc.*, 686 F.2d 415, 417 (6th Cir. 1982) (federal courts sitting in diversity apply the choice of law rules of the forum state); *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (Tennessee follows the rule of *lex loci contractus*, which provides that a contract is governed by the law of the jurisdiction in which it was executed absent a contrary intent).

Under Florida law, "[a] written power of attorney is a contract to be interpreted as a matter of law." *St. Gaudens v. S.E. Bank, N.A.*, 559 So. 2d 1259, 1260 (Fla. Dist. Ct. App. 1990). "Powers of attorney are strictly construed. They will be held to grant only those powers that are specified[.]" *Estates of Irons ex rel. Springer v. Arcadia Healthcare, L.C.*, 66 So. 3d 396, 398 (Fla. Dist. Ct. App. 2011). As with all contracts, where the language of a contract is clear and unambiguous, the Court must interpret the contract in accordance with its plain meaning in a manner that gives "reasonable meaning and effect to all of the provisions" and "does not render any provision of the contract meaningless" *Super Cars of Miami, LLC v. Webster*, 300 So. 3d 752, 754 (Fla. 3d DCA 2020) (citing *Aucilla Area Solid Waste Admin. v. Madison Cty.*, 890 So. 2d 415, 416-17 (Fla. Dist. Ct. App. 2004), and *Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n.*, 169 So. 3d 197, 203 (Fla. Dist. Ct. App. 2015)). "In interpreting a contract, '[c]ourts are not to isolate a single term or group of words and read that part in isolation; the goal is to arrive at a reasonable

4

interpretation of the text of the entire agreement to accomplish its stated meaning and purpose." *Horizons A Far, LLC v. Plaza N 15, LLC*, 114 So. 3d 992, 994 (Fla. Dist. Ct. App. 2012).

### III. ANALYSIS

The parties appear to agree that the scope of the Agreement to Arbitrate covers the claims brought by Mr. Adams in this case. They disagree on whether the Agreement to Arbitrate was a valid agreement between the parties.

There is no question that the Agreement to Arbitrate waives a trial by jury. The Agreement recognizes as much where it provides that "[t]he parties to this Agreement … understand that a judge and/or jury will not decide their case." (*See* 265-2 at V.A.1.). Even if the Agreement did not expressly contain a jury waiver provision, "all agreements to arbitrate necessarily waive [a] party's right to a jury trial." *Johnson v. Career Sys. Devs.*, No. 4:09cv-76-M, 2010 WL 292667 (W.D. Ky. Jan. 20, 2010); *see also*, *Cooper v. MRM Investment Co.*, 367 F.3d 493, 506 (6th Cir. 2004) (noting that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate") (quoting *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001)).

Mr. Adams contends there is not a valid agreement to arbitrate because the Power of Attorney authorizing Mrs. Adams to act of his behalf expressly prohibits her from waiving a trial by jury. (*See* Doc. No. 278 at 4 (citing Doc. No. 265-1 ("[M]y Agent shall not have the power to waive a trial by jury.")). Mr. Adams argues that agreement to binding arbitration necessarily waives a jury trial and is therefore outside the scope of authority granted by the Power of Attorney. (*Id.*).

Defendant argues that the jury waiver provision cannot preclude Mrs. Adams from agreeing to binding arbitration on behalf of Mr. Adams because the Power of Attorney also gives her the authority "to arbitrate," and Plaintiff's interpretation would render the authority "to

5

arbitrate" meaningless. Defendant posits that a better interpretation of the Power of Attorney – one that will give meaning to all terms – is to apply the jury waiver provision "only to claims in which a jury trial is otherwise available (*i.e.*, in litigation)." (Doc. No. 265 at 8). Under Defendant's proposed interpretation, if Mr. Adams' agent agreed to arbitrate claims on his behalf, a jury trial would no longer be available for those claims and the jury trial waiver prohibition would not apply.

Defendant's proposed interpretation presents at least two problems. First, Defendant's argument is predicated on the assumption that the authority to arbitrate must include the authority to agree to arbitration. Of course, that is not necessarily the case – authority to agree to arbitration can be wholly separate from authority to arbitrate. For example, the authority to arbitrate would allow Mrs. Adams to participate in arbitration of claims for which Mr. Adams himself agreed to arbitrate. Participating in an arbitration of claims for which Mr. Adams himself agreed to arbitration is not a waiver of a jury trial by Mrs. Adams. This leads to the second problem with Defendant's proposed interpretation. If the authority to arbitrate includes the authority to agree to resolve claims by binding arbitration – which necessarily waives a trial by jury (if a jury is available) – Mrs. Adams could unilaterally broaden her authority and circumvent the prohibition against waiver of jury trials simply by agreeing to arbitration.

A more reasonable interpretation of the Power of Attorney – one that gives effect to all of the provisions – is that Mrs. Adams is authorized to arbitrate claims on Mr. Adams' behalf by serving as his representative in the arbitration, but she is not authorized to waive a jury trial by agreeing to binding arbitration on his behalf. The Court need not consider whether the Power of Attorney granted Mrs. Adams authority to agree to arbitration of claims where a jury trial is not available because a jury trial is available for the claims in this case. *See Tull v. United States*, 481 U.S. 412, 425 (1987) ("[I]f a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.").

6

Because Mrs. Adams was not authorized to waive a trial by jury, the Court concludes she was not authorized to agree to binding arbitration on Mr. Adams' behalf.

## IV. CONCLUSION

For these reasons, Defendant's Motion to Compel Arbitration (Doc. No. 264) will be **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE