IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MEGHAN BRIGHT, ET AL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 3:19-cv-00374 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| BROOKDALE SENIOR LIVING, INC., | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Class Certification (Doc. No. 309). Defendant filed a response in opposition (Doc. No. 321) and Plaintiffs filed a reply (Doc. No. 348). Both parties have also filed competing motions to exclude expert witnesses (Doc. Nos. 322, 324, 326, 334, 335, 336, 337). For the reasons set forth more fully below, Plaintiffs' Motion for Class Certification (Doc. No. 309) will be **DENIED** without prejudice. The parties' motions to exclude expert witnesses (Doc. Nos. 322, 324, 326, 334, 335, 336, 337) will also be **DENIED** without prejudice.

### I.  BACKGROUND

Plaintiffs bring this action against Brookdale on behalf of themselves and current and former Brookdale residents from North Carolina and Florida who contracted with Brookdale for services for which Brookdale was paid. (Doc. No. 1 at PageID # 3-4). Plaintiffs allege that Brookdale failed to provide sufficient staffing to meet the needs of the residents and materially misrepresented in its sales and marketing materials and uniform residency agreement that staffing levels were sufficient to meet the residents' care needs. (*See* Doc. No. 1). Plaintiffs allege that Brookdale systematically and willfully understaffed communities to meet predetermined corporate labor budgets and profit margins using a staffing algorithm known as the Service Alignment

Operating Software ("SAOP") to purposely dilute and underestimate the staffing time actually needed in communities. (*Id.* ¶ 14-17). On August 14, 2023, Plaintiffs filed the pending Motion for Class Certification (Doc. No. 309).

## II. STANDARDS GOVERNING CLASS CERTIFICATION

To certify a class, the Court must be satisfied that the requirements of Federal Rule of Civil Procedure 23(a) and at least one of Rule 23(b)'s provisions are met. *See Comcast v. Behrend*, 569 U.S. 27, 33-34 (2013). Plaintiffs here seek certification under Rule 23(b)(3). The decision whether to certify a class is committed to the sound discretion of the district judge and turns on the particular facts and circumstances of each individual case. *See In re Whirlpool Corp. FrontLoading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) allows certification if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Plaintiffs bear the burden of showing that the requirements for class certification are met. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016).

### III. ANALYSIS

**A. Proposed Classes**

Plaintiffs proposed the following classes for certification under Fed. R. Civ. P. 23(a) and 23(b)(3):

(1) North Carolina Classes:

    a. North Carolina Consumer Protection Class: All persons who resided at a Brookdale assisted living or memory care facility in North Carolina between April 24, 2016 and this Court's preliminary approval date of the class, whether currently or formerly residing, and who contracted with a Brookdale facility to assess their personal service needs and develop a Personal Service Plan for which they paid, but for whom there does not exist an arbitration agreement that Brookdale can enforce; and

    b. North Carolina Contract Class: All persons included in the North Carolina consumer protection class except residents whose contractual relationship with Brookdale is governed exclusively by a predecessor's agreement and not by a standard Brookdale agreement.

(2) Florida Classes:

    a. Florida Consumer Protection Class: All persons who resided at a Brookdale assisted living or memory care facility in Florida between March 14, 2022 and this Court's preliminary approval of the class, whether currently or formerly residing, and who contracted with a Brookdale facility to assess their personal service needs and develop a Personal Service Plan for which they paid, but for whom there does not exist an arbitration agreement that Brookdale can enforce;[1] and

---

[1] Plaintiffs state that the Florida classes exclude members of the certified class in *Runton v. Brookdale Senior Living, Inc.*, No. 17-cv-60664-CMA. (Doc. No. 309 at PageID # 4595). Plaintiffs also state that "[t]he *Runton* class was defined as: 'All persons who entered a Brookdale assisted living facility ('ALF') in the State of Florida between April 4, 2013 and November 13, 2019, the preliminary approval date, whether currently or former residing, and who contracted with a Brookdale ALF for assisted living or

3

b. Florida Contract Class: All persons who resided at a Brookdale assisted living or memory care facility in Florida between May 3, 2015 and this Court's preliminary approval of the class, whether currently or formerly residing, and who contracted with a Brookdale facility to assess their personal service needs and develop a Personal Service Plan for which they paid, but for whom there does not exist an arbitration agreement that Brookdale can enforce.[2]

(Doc. No. 309 at PageID # 4593 – 4596).

**B. Rule 23(a)**

1. Numerosity

To satisfy the numerosity requirement, Plaintiffs must show that the numerosity of injured persons makes joinder of all class members impracticable. Fed. R. Civ. P. 23(a)(1). "Generally, the number of members of the proposed class, if more than several hundred, easily satisfies the requirements of Rule 23(a)(1)." *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 403 (M.D. Tenn. 2019) (citing *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n. 1 (6th Cir. 1997) (joinder of parties impracticable for class with over 1100 members and "[t]o reach this conclusion is to state the obvious")). Plaintiffs contend that "there are *at least* the following number of class members: (a) 51 in the [North Carolina] consumer protection class; (b) 44 in the [North Carolina] contract class; (c) 36 in the [Florida] consumer protection class; and (d) 160 in the [Florida] contract class." (Doc. No. 311 at PageID # 4639).

---

memory care services but for whom there does not exist a signed arbitration agreement applicable to the services provided to them at a Brookdale ALF.' Persons who opted out of the class, like Plaintiff Bright, are not members of the *Runton* class." (*Id.*).

[2] Plaintiffs also contend that the Florida contract class excludes residents whose contractual relationship with Brookdale is governed exclusively by a predecessor's agreement and not by a standard Brookdale agreement. (Doc. No. 309 at PageID # 4595).

4

Plaintiffs also argue that as of 2022, Brookdale has 57 communities in North Carolina and 77 communities in Florida and that additional residents with unenforceable arbitration agreements will likely be discovered through the review of additional agreements produced from these other facilities during merits discovery." (*Id.*). Brookdale does not dispute that Plaintiffs satisfy the numerosity requirement. Accordingly, the Court finds that Plaintiffs have established that their proposed classes are sufficiently numerous to be impracticable for joinder.

2. Commonality

Plaintiffs also must show that there are "questions of law or fact common to the class." *In Re Ford Motor Co.*, 86 F.4th 723, 727 (6th Cir. 2023) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). "Although written in the plural, Rule 23(a)(2) requires that the class identify only one common question*." Doster v. Kendall*, 54 F.4th 398, 430 (6th Cir. 2022) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). "But not just any 'common' question will do." *Doster v. Kendall*, 54 F.4th 398, 430 (6th Cir. 2022). Rather, a "common" question within Rule 23(a)(2)'s meaning is a contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "If a disputed fact is critical to whether a common question can be answered yes or no for the class, the plaintiff must offer proof." *Doster v. Kendall*, 54 F.4th 398, 432 (6th Cir. 2022) (citing *Wal-Mart*, 564 U.S. at 351).

Through their motion, Plaintiffs identify seven questions to clear the commonality hurdle, asserting each question: (1) raises common issues that will drive resolution of the claims; and (2)

will have the same answer for every class member. (Doc. No. 311 at PageID # 4639-41). First, Plaintiffs submit the following question is common for all four proposed classes:

> whether Brookdale – through its corporate policies, practices, and electronic systems, systematically understaffs its facilities in violation of applicable standards and thus make it impossible to meet consistently the collective personal care needs of residents sharing available staff time?

(Doc. No. 311 at PageID # 4639). Next, Plaintiffs submit the following three questions will drive the resolution of each putative class member's claims in the proposed North Carolina and Florida consumer protection classes:

> Did Brookdale – through its marketing materials, website, form contracts, and other means – mislead its residents, or conceal material facts, about its staffing practices, thereby leading residents to believe (reasonably but incorrectly) that Brookdale would adequately staff its facilities?
>
> Did Brookdale's misleading statements and omissions about its staffing practices, and resulting understaffing, constitute "unfair or deceptive practices or acts" that affected commerce?
>
> Did Brookdale's misleading statements, omissions, and understaffing cause actual, concrete injuries and damages to Plaintiffs and the prospective class members because Plaintiffs paid for an adequately staffed facility and Brookdale's understaffing resulted in a facility without safety, security, and peace of mind that Brookdale promised?

(Doc. No. 311 at PageID # 4640). Finally, Plaintiffs submit the following three questions will drive the resolution of each putative class member's claims in the proposed North Carolina and Florida contract classes:

> Did Brookdale materially breach the standard residency agreements – that promised to assess each class member's personal service needs and develop a Personal Service Plan for each Plaintiff and class member – when Brookdale understaffed its facilities in violation of applicable standards?
>
> Alternatively, insofar as Brookdale claims it was not a party to the standard residency agreements, did Brookdale intentionally and unjustifiably induce or procure a breach of the contract by the non-

6

> resident party to the contract when Brookdale understaffed its facilities in violation of applicable standards?
>
> Did Brookdale's breach of, or interference with, the residency agreement cause actual damages to Plaintiffs and the class members because Plaintiffs and the class members paid for an adequately staffed facility and Brookdale's understaffing resulted in a facility without the safety, security, and peace of mind that Brookdale promised?

(Doc. No. 311 at PageID # 4640-41).

In response, Brookdale submits that each of Plaintiffs' foregoing common questions "are predicated on their [sic] being common evidence capable of proving a common answer to the question of whether Brookdale systematically understaffed the Communities relative to some undefined 'standard.'" (Doc. No. 321 at PageID # 11771). Brookdale argues Plaintiffs' failure to consider or analyze the SAOP benchmarks demonstrate the absence of common evidence capable of assessing whether the communities were systematically understaffed relative to any standards. (Doc. No. 321 at PageID # 11771). Brookdale further contends that "commonality is not satisfied where … there is no policy or practice common to the class and local managers instead retain discretionary decision making." (Doc. No. 321 at PageID # 11773-74 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011); *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013)). Brookdale argues commonality is not satisfied in the present case because the executive directors of each Community retain the type of discretionary decision making that typically indicates the absence of a uniform policy. (Doc. No. 321 at PageID # 11774).[3] Additionally, Brookdale relies on the opinion of its expert, David Duffus, to establish that "[r]esidents at certain Brookdale

---

[3] *Duke* did not establish a bright line rule against a finding of commonality in every instance of a company policy allowing discretion by local supervisors. Rather, the court in *Duke* concluded the plaintiffs had not established the existence of any common question because the plaintiffs had "not identified a common mode of exercising discretion that pervades the entire company[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355-56 (noting "it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction.").

7

Communities are charged, among other fees, a basic rate, plus additional charges based on their assessed needs, know as 'Categories of Care'" while "Residents at other Brookdale Communities pay a flat rate regardless of their care needs, known as 'All-Inclusive.'" (Doc. No. 321-13 ¶ 16). Mr. Duffus points to three communities that do not use Categories of Care pricing and states that for these communities "the cost of care is not directly linked to the Personal Service Rate." (*Id.* ¶ 48). Further, Mr. Duffus contends that the amount paid for a specific service can vary significantly by resident and "there is no uniform price applicable to all or even most Proposed Class Members." (*Id.* ¶¶ 67, 71). Brookdale also argues there is no common answer to the question of whether the communities were systematically understaffed because Plaintiffs' "highly granular" staffing analysis requires individualizes data for each Community and "will give rise to more than 1.5 million different calculations with more than 1.5 million answers." (Doc. No. 321 at PageID # 11771-722). Brookdale points to non-binding cases where courts have denied class certification in other understaffing claims against senior living providers due to this type of individualized staffing analysis. (Doc. No. 321 at PageID # 11773 (citing *Bartels v. Saber Healthcare Grp., LLC*, No. 5:16-CV-283-BO, 2020 WL 6173566, at *2 (E.D.N.C. Oct. 21, 2020); *Passucci v. Absolut Center for Nursing and Rehabilitation at Allegany, LLC*, No. 2010/6955, 2014 WL 7912858, at *24 (N.Y. Sup. Ct. Jan. 10, 2014); *Hooker v. Citadel Salisbury LLC*, No. 1:21-CV-00384, 2023 WL 3020967, at *6 (M.D.N.C. Apr. 20, 2023)).

Plaintiffs point to evidence that Brookdale requires all of its communities to use the SAOP staffing algorithm and that SAOP is used by all of the Brookdale communities in Florida and North Carolina. (Doc. No. 312-24 at PageID # 4921; Doc. No. 312-25 at PageID # 4976). Plaintiffs also point to evidence that various departments, including dining, housekeeping, laundry, and transportation, are required to comply with the SAOP benchmarks. (Doc. No. 312-69; Doc. No.

8

312-70; Doc. No 312-25 at PageID # 499 – 5000). Further, Plaintiffs have established that Brookdale documents each resident's care needs using a uniform assessment tool that divides them into categories and that each category has a corresponding pricing schedule which represent the amount of staff time needed to meet resident's needs. (Doc. No 312-32 at PageID # 5109-5110). Plaintiffs also present evidence that Brookdale maintains separate bonus programs for facility and corporate managers and both programs which "incentivizes Executive Directors to stay within the [SAOP's] expectations including labor hours and overtime by paying a bonus of up to 25% of their salary, which can be as much as $20,000 per year." (Doc. No. 311 at PageID # 4634; Doc. No. 312-88; Doc. No. 312-24 at PageID # 4933-4934, 4938).

The evidence presented by Plaintiffs indicates that Brookdale determines staffing needs for each community on a collective, not individual, basis. Accordingly, the Court finds that a common question exists within Rule 23 as to whether Brookdale, through its corporate policies, practices, and electronic systems, systematically understaffs its facilities in violation of applicable standards that make it impossible to meet consistently the collective personal care needs of residents sharing available staff time. This is so because it is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Therefore, the Court finds that the commonality requirement is satisfied.

3. Typicality

"Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young*, 693 F.3d at 542. "Typicality is met if the class member's claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d

9

388, 399 (6th Cir. 1998)). "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852–53. A plaintiff's claims generally will be "typical" of the class's when all of them arise from the same "course of conduct" and assert the "same legal theory." *Doster v. Kendall*, 54 F.4th 398, 438 (6th Cir. 2022) (citations omitted); *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation and internal quotations omitted) ("for the district court to conclude that the typicality requirement is satisfied, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.").

Plaintiffs argue that the claims in this lawsuit are typical of the claims of all proposed class members because they arise out of the same course of conduct, namely, that Brookdale allegedly "failed to keep its promise of meeting the assessed, collective needs of the residents" of its communities. (*Id.* at PageID # 4642). Plaintiffs state that three objective criteria define membership for the four proposed classes: (1) residency in a Brookdale facility in the two states during specified periods; (2) the resident contracted with a Brookdale facility to assess the resident's personal service needs and develop a Personal Service plan for which the resident paid; and (3) Brookdale cannot enforce an arbitration agreement against that resident. (Doc. No. 311 at PageID # 4643-44). Plaintiffs have defined the following six criteria for unenforceable arbitration agreements: (1) the residency or arbitration agreement is not signed; (2) the arbitration provision within the residency agreement is stricken or declined in writing; (3) Brookdale fails to produce an instrument that authorized the third party to sign the residency or arbitration agreement on behalf of the resident; (4) the third party instrument produced by Brookdale excluded from the third party's authority the power to consent to arbitration or waive the right to a jury trial; (5) the

10

third party-instrument produced by Brookdale, by its terms, requires a certification by one or more physicians for the instrument to be effective and Brookdale fails to produce such certification; or (6) the third-party instrument produced by Brookdale merely authorizes the third party to make health care decisions. (*Id.* at PageID # 4645). Plaintiffs argue that the proposed classes can be feasibly certified even if some class members' claims may be affected by an arbitration agreement.

In response, Brookdale argues that determining class membership requires a highly individualized inquiry because of their affirmative defenses on the arbitration agreements and that Plaintiffs "have not negated the resident-by-resident inquiry that will be required to determine who is and is not subject to arbitration under their supposed criteria." (Doc. No. 321 at PageID # 11775-78). Brookdale also disputes that the criteria proposed by Plaintiffs are "objective." (Doc. No. 321 at PageID # 11776). Brookdale argues that the absence of signed arbitration agreements does not preclude arbitration and that it is entitled to discovery to see if Plaintiffs possess signed agreements. Brookdale also argues that individualized discovery is also required for "Plaintiffs' power-of-attorney (POA) 'criteria'" and "there is little doubt that individualized fact-finding will be needed to determine who lacks an 'enforceable arbitration agreement' and is therefore a member of the class." (*Id.* at PageID # 11777).

The Court finds that the proposed class definitions and the criteria outlined by Plaintiffs for enforceability of the arbitration agreements lends itself to a host of individualized inquiries that are likely to result in discovery for each arbitration agreement. Accordingly, due to the highly individualized inquiries that will be necessary to determine which residents have enforceable arbitration agreements, the Court finds that Plaintiffs have failed to satisfy the typicality requirement.

### C. Rule 23(b)

The Court also finds that the proposed class definitions fail to predominate over questions affecting individual members. Under Fed. R. Civ. P. 23(b)(3), questions of law or fact common to class members must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 594, 1997). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quotation omitted). The Sixth Circuit has recently explained that the predominance requirement for class certification requires a court to add up all the suit's common issues, *i.e.* those that the court can resolve in a yes-or-no fashion for the class, and all of its individual issues, *i.e.* those that the court must resolve on an individual-by-individual basis, and then qualitatively evaluate which side predominates over the other. *See Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 300 (6th Cir. 2023) (citing Fed. R. Civ. P. 23(b)(3); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018)).

As Brookdale correctly points out in its response, it appears that most residents are subject to arbitration agreements. (Doc. No. 321 at PageID # 11775). The Court finds that Plaintiffs' proposed criteria for determining enforceability of arbitration agreement is likely to result in individualized discovery for each arbitration agreement and that individualized questions regarding the enforceability of the arbitration agreements directly impact class membership eligibility. The Court finds that such questions must be resolved on an individual-by-individual basis and that the proposed class definitions are likely to result in "mini-trials" to determine the

12

enforceability of arbitration agreements. While the individualized inquiries precluding the proposed class definitions from satisfying Rule 23 may be satisfied if Plaintiffs proposed different class definitions to address the issues described above, the proposed definitions fail to predominate over questions affecting individual members.

**D. Motions to Exclude Expert Witnesses**

Both parties have filed competing motions to exclude expert witnesses whose testimony and opinions were relied on in Plaintiffs' motion for class certification and Brookdale's response. (Doc. Nos. 322, 324, 326, 334, 335, 336, 337). The Court did not rely on the expert reports when deciding Plaintiffs' motion for class certification. Accordingly, the motions (Doc. Nos. 322, 324, 326, 334, 335, 336, 337) will be **DENIED** without prejudice.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. No. 309) will be **DENIED** without prejudice. The parties' motions to exclude expert witnesses (Doc. Nos. 322, 324, 326, 334, 335, 336, 337) will also be **DENIED** without prejudice.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE